We will hear argument now in No. 192709, United States v. Young. Your line is now unmuted. I'm sorry. Excuse me. Your line is now muted. You'll be on the line. All right. Is everyone else muted? So we'll hear Mr. Hayes. Great. Mr. Hayes, please proceed. Good morning, your honors. May it please the court. Tracy Hayes on behalf of Michael Young, the appellant. The district court committed procedural error by basing the sentence on clearly erroneous facts. Here, the district court, the judge's statement was that this case involved an extraordinary quantity of very dangerous synthetic drugs. That they were produced and distributed in a sophisticated fashion and that the drugs were very dangerous and powerful synthetic drugs. We argue that there's nothing in the record to support those facts or what the court believed were facts. I start with the quantity of drugs. First, the amount of drugs was not extraordinary. It was quite ordinary. And I turn to the sentencing guidelines here as the court knows. The sentencing guideline here, the base offense level, is driven by the quantity, the drug quantity, and the base offense level here was 24. The drug quantity table, as the court is aware, runs from level six for less than one kilogram of marijuana to level 38 for 90 kilograms of marijuana. Here, a span of 100 to 400 kilograms is far nearer the bottom, and I refer to the span because that's the amount that's attributed to Mr. Young. Level 24 of the sentencing guidelines in this table is in fact in the middle of all drug offenses. Moreover, it's far below the middle in terms of quantity, and that's important when you're not hearing them. Mr. Hayes, could you speak up, please? We're having a little trouble hearing you. Sure. Judge Calabresi, can you hear me? Yes, I can hear you fine. Okay, but Mr. Hayes, can you increase the volume on your phone, please, or speak more closely close to the mic? Yes, thank you. Thank you. Is that better, Judge Calabresi? Yes. Please make an effort to speak up, Mr. Hayes. Go ahead and continue. Yes, Your Honor. I want to now turn to the statement from the district court that the drugs here were very dangerous synthetic drugs, very dangerous and powerful synthetic drugs. There's nothing, again, in the record to support a description of the synthetic drugs in question as being very dangerous. The impact here of how the drugs impacted people or could have impacted people are exaggerated. Mr. Hayes, my understanding is that the thrust of your appeal is that the district court misapprehended that people on the New Haven Green that day two years ago had overdosed. And, therefore, treated with undue gravity the quantity and the types of the drugs. You have the testimony of the doctors saying these were not overdoses. These were actually the intended effects. These drugs have significant effects on people's nervous systems and on their behavior and their blood pressure and on all kinds of physiological functioning. The district court gave a sentence that was at the bottom of the guidelines range. You don't seem to make a procedural argument that she miscalculated the range. Am I correct in that? The range was 70 to 87 months and he got 72 months. It's a little hard for me to accept the notion that these are unlawful drugs that he manufactured and that he was in the business of selling. People took them and they responded badly to them. I don't think you've identified a procedural error. Please tell me exactly what the error is. I am referring to the actual characterization, what the district court believed was the inherent danger here. I am not hearing him. I'm sorry, Mr. Hayes. I'm not sure quite what we can do. Can you even move closer to the mic and raise your voice significantly? Yes. Thank you, Your Honor. I am referring in response to the court's inquiry. I'm referring to the actual dangerousness of the drugs here. So it's the district court's characterization of them as dangerous. Is that what you object to? Very dangerous. Mr. Calabresi, can you hear now? Is that a little better? Yes. Okay. Please keep your voice up, Mr. Hayes. Thank you. So, as you can see, in comparison to other drugs, the drugs in question here, it's not whether or not they pose some danger as this court cited to the users. We know that they do. It's why are they on the controlled substance list? The question is whether ‑‑ I'm sorry, I should say we know that they do. They are on the controlled substance list. The question is whether they are substantially more dangerous than other controlled substances. Why do you say that? The statement by the court that this was extraordinary amount is really a statement that it was a large amount. The statement that they're very dangerous is a statement that drugs are very dangerous. The statement that it was sophisticated is a statement referring to the fact that they came from China. These are statements which can be made and are basically a description. They really are not the kind of thing that suggests a difference in anchoring, which would be the only thing that would make this a procedural error. Isn't this just a statement by a court that this was a bad deal? And then he gives them a sentence which is at the bottom of the range. Your Honor, if this were 70 months ‑‑ Can you hear me? Yes. Yes, Your Honor. I've lost him again. Can the court hear me? I've lost him again. Judge Calabresi is saying once again that he can't hear you. Can you try once again to raise your voice and respond? You heard Judge Calabresi's question, right? Yes. Okay. Speak really loud into the mic. Blast us out, okay? Yes, Your Honor. These were just not normal statements. These statements, in fact, drove the sentence. If this were a 70‑month sentence, then we wouldn't appear before the court. But the sentence here, we have to appear before the court. Two things occurred here. I argue that those statements would not have been made if it did not occur shortly ‑‑ if the arrest did not occur shortly after the New Haven Green overdose incident, which, in fact, were not overdoses at all. The intended effect that these drugs had and all of the other drugs on that controlled substance list occurred, right? And there's nothing to say that, again, here there were overdoses. There's nothing to say that they caused deaths. The intended effect was what would occur. So I make that argument because there's nothing here to say that they were very dangerous or more dangerous than any other drugs on that list. That's significant here. And, again, I point to the actual sentence. Also, I'd ask the court to consider the sentence was imposed after Mr. Young had already served at the very least 12 months. That was on a state ‑‑ Mr. Hayes, wasn't that on a state sentence that was separate? He had a separate conviction, right? Although the court said that she was taking that into account, the sentence that she imposed was 72 months. And even had she imposed an 84‑month sentence, that would have been within the guidelines. So I'm having difficulty understanding how this was error. Well, I would argue that 70 months, again, is two months less than what the court actually imposed. Eighty‑four months is at the top of the guidelines. So if we were to look at this as sort of an ordinary case where just ordinary statements were made, as the court just indicated, then, sure, 72 months might be appropriate for 84 months. But they weren't. Here the sentence was driven by the actual statement that the court made where the court had, in our view, sort of an incorrect view of the drugs here. They were not more than ‑‑ You have a minute left, Mr. Hayes. Thank you. The court's incorrect reliance on these inaccurate, I would argue, characterization of the quantity and the dangerousness of the drugs in question and the sophistication of Mr. Young's operation when it was just Mr. Young. Maybe when we talk about sophistication, it was just Mr. Young. It was not a conspiracy to distribute that we might see where there is a level of sophistication and there are layers of management. It's Mr. Young purchasing items on the Internet, soaking these leaves, if you will, in alcohol, allowing them to dry, and putting these substances on these leaves. There's nothing extraordinary or sophisticated about that. It was a one‑man operation. And so I'd ask the court to consider that in terms of sophistication. Okay. Thank you. Very good. Thank you very much. You have reserved some rebuttal time. We'll hear from the government. Mr. Chen? Thank you, Your Honor. Excuse me, Judge Carney. I'm sorry to interrupt. It looks like we lost Judge Calabrese. Oh, we did. Okay. Let's pause, Mr. Chen. He's trying a different phone, he stated, so he should be with us shortly. Okay. Thank you very much. I just see the message you sent. No problem. You're having more than usual difficulty this morning. Thank you. Mr. White, are you in touch with Judge Calabrese by phone? I was actually just sending a text to tell him if he wants he could also give me the alternate number and I could try calling him. Okay. Hi. I'm back, finally. I do not know what is going on. I keep getting disconnected and then when I dialed in, they wouldn't recognize the correct access code, so I don't know what's happening. I can hear you somewhat better at the moment than on the last connection, so let's proceed. I'm sorry for your difficulty, Judge Calabrese. Mr. Chen. Thank you, Your Honors. May it please the court. AUSA Hal Chen for the United States and the District of Connecticut. And if I blast you too loud, please let me know. I am trying to keep my voice up. I can hear you fine. Let me interrupt. Judge Calabrese, Judge Newman, can you hear Mr. Chen all right? Yes, I do. Judge Newman, yes. Very good. Thank you. Please proceed. Thank you, Your Honor. As Your Honors have correctly observed, in essence, the defense disagrees with the adjectives used by the district court in making her factual findings. However, the defense has no issue with the underlying facts that were found regarding the quantity of the synthetic drugs, the dangerousness thereof, and the sophistication of Mr. Young's drug operation. Notably, the defense did not challenge or object to the district court's findings below on quantity, dangerousness, and sophistication. And just to pick up Her Honor's question, with respect to the district court's findings, the district court did not make any mention of the incident on the New Haven Green or the fact that the risk that the drugs that were found in Mr. Young's possession would cause overdoses. So there was no reference by the district court to the incident in the New Haven Green on August 2018. Let me ask this question. Mr. Chen, I note in your footnote four on page 17 that you refer to the sentencing memorandum that the government submitted with regard to one of the drugs that Mr. Young was convicted of making, that it was identified as one of the primary synthetic drugs that was found in the New Haven Green. And given the timing of all of this, it seemed plausible that the district court judge might have taken that into account generally in her assessment of the severity of the crime, the gravity of the crime. Do you think that's incorrect? That she didn't have that in mind at all, given your submission? Well, first, based on this record, Your Honor, the district court did make no findings, made no links to the New Haven Green incident and the synthetic drugs. And more importantly, in the government's sentencing memorandum, the government made no linkage, made no attribution of the drugs that were involved in the New Haven Green incident to Mr. Young. There was no ascribing any of the terrible events at the New Haven Green to Mr. Young. In fact, it really just went to the dangerousness. It was the government pointing out that, look, this is one of the drugs that was found in Mr. Young's possession at the time of the execution of the search warrant. And, in fact, we do have a recent incident where the district court, the sentencing court, was aware this is the potential danger that could be caused if one consumes those drugs. So I would submit to Your Honor, certainly there was no clear error emanating from that spare footnote in the government's sentencing memo. In addition, with respect to the issue of the quantity, which Brother Counsel alluded to before, 1.6 kilograms of synthetic drugs for the District of Connecticut is an extremely large amount of synthetic drugs. As a matter of course, in this district, while the typical illicit drugs such as heroin, cocaine, unfortunately now we see more fentanyl that's prosecuted, but the synthetic cannabinoids and the synthetic cathinones that were involved in this case were highly unusual. And so given that infrequency of prosecution of these particular drugs, the court's finding that it was an extraordinary quantity was well taken and it was well based in fact. With respect to the dangerousness problem, the defense's own sentencing memorandum made clear that the drugs or some of the drugs involved in this case can cause a rapid drop in blood pressure and can cause delusion. The government's own presentation included in the PSR was that these drugs could cause altered mental status, loss of consciousness, seizures, and suicidal thoughts. So the government respectfully submits that the dangerousness of these drugs, as found by the district court, was very well supported in this case. Finally, with respect to the sophistication, Mr. Young was a one-man drug operation. He obtained the synthetic drugs directly from China without going through any middleman. He processed and manufactured the drugs for street-level consumption on his own. He used the internet, particularly Craigslist, to pinpoint and identify customers who would directly communicate with him to be serviced for these drugs. So finally, with respect to the sophistication finding made by the district court, I would say that this was very well supported by the record. And finally, with respect to substantive reasonableness, as I believe both Judge Calabresi and Judge Carney have pointed out, this was a sentence near the bottom of the guideline range. In fact, the district court specifically recognized that the sentence would have been higher but for the time served by Mr. Young as a result of his state special parole violation. So the government would say to your honors, based on this record, that the sentence imposed by Judge Dooley was both procedurally and substantively reasonable. There is no clear error, let alone plain error. And if your honors have no further questions, I would rest on my papers. Thank you very much, Mr. Chen. Thank you. Mr. Hayes, you have two minutes of rebuttal. Thank you. Please proceed if you'd like. Thank you. I would like to briefly rebut the government's arguments. Mr. Hayes, it feels to me like you're talking through a piece of cloth. Could you really speak up and enunciate really well and get right close to the mic for us? Yes. I would like to rebut the government's arguments. I understand I have two minutes. The New Haven Green, again, was in the backdrop of all of the arrest here and the prosecution here. That was one of the deciding factors in terms of the sentence here, and I'd ask the court to consider that. When the government argued that it did not necessarily refer to the New Haven Green, it did, as this court has pointed out. The government just acknowledged that it did. Right. Right? It acknowledged that it did in the sentencing memorandum, and it pointed that out very clearly in its brief. It's not avoiding that. I think that's not fair. I apologize, Your Honor. If it's not fair that the government did, I believe the court did not make reference. But the arrest occurred shortly after the incident in New Haven Green. In fact, in the record is the fact that Mr. Counsel, so what? Why would it have been quite appropriate for a sentencing judge to take into account the general circumstances that were going on? Why would that be so wrong? I mean, let's assume that they did everything you say. So what? Well, to answer this, Your Honor, again, it goes to the actual sentence. A bottom of the guideline sentence here would have been 70, 7-0 months, not 72 months, not near the bottom of the guideline, but the bottom of the guidelines. And the fact that the arrest and the prosecution occurred shortly after the New Haven Green had an effect here, and I think that's significant. But even if it had an effect, so what? Can't a judge take into account the general circumstances that are going on? If there are riots somewhere, can't a judge take it into account? Aren't these the things that a sentencing judge looks at as well as the particulars of the individual case? Doesn't that happen all the time? It does, Your Honor. But what we're saying is that some of the statements and what the court looked at was exaggerated here, and it was because of those events. Did you object at the time? To the – I'm sorry, Your Honor, to the characterization? Yes. No, Your Honor. Okay. The only thing we did – Thank you, Your Honor. In our filings, we discussed the New Haven Green. I understand what the court is saying in terms of the district court being able to consider what's going on at the time. But what I'm arguing is that here it was exaggerated, and that is borne out. Thank you. All right. I think we have the argument, Mr. Hayes. Thank you very much. Thank you, Mr. Chen. We will reserve decision. Thank you. Thank you.